

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
01/19/2016

| | | |
|---|---|---|
| IN RE: | § | |
| SHEA, LTD. | § | CASE NO: 14-70348 |
| | § | |
| THE SOCIAL CLUB, LTD; dba SOCIAL | § | CASE NO: 15-70142 |
| STEAKHOUSE & CLUB | § | |
| | § | Jointly Administered Case |
| Debtor(s) | § | |
| | § | CHAPTER  11 |

**MEMORANDUM OPINION**
**DENYING LONE STAR NATIONAL BANK'S MOTION**
**TO CONVERT CASE TO CHAPTER 7**
[*Resolving Case No. 14-70348; ECF No. 207*]

## I. Introduction

Who would have dreamed that creditors would step in to bail out a pair of debtors that find themselves in a predicament? However, that is precisely what this case concerns. This Court conducted a hearing on several motions in this jointly administered chapter 11 case. All but one motion remains pending following the withdrawal of most motions. What remains is a Motion to Convert Case to Chapter 7. In order to resolve the instant matter, this Court must consider whether the statutory deadline to file a plan, pursuant to § 1121(e), applies to creditors as well as small business debtors.

## II. Findings Of Fact

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rules of Bankruptcy Procedure 7052, which incorporates Federal Rules of Civil Procedure 52.  To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such. The facts, in pertinent part, are as follows.

1. On June 30, 2014, Shea, Ltd. (hereinafter "*Shea*") filed a voluntary petition for chapter 11 bankruptcy, pursuant to title 11 of the United States Code,[1] and was not designated as a "small business debtor."[2]

2. On its Monthly Operating Report, filed December 11, 2015, Shea alleged that its line of business was in real estate development. [Case No. 14-70348, ECF No. 216]. Shea's Counsel orally confirmed the fact that Shea accrues most of its revenue from leasing commercial properties.

3. Thus far, at no point during the pendency of the bankruptcy case has Shea ever been recharacterized as a small business debtor, as defined by 11 U.S.C. § 101(51D), under a court order or otherwise by the debtor.

4. The Social Club, Ltd. (hereinafter "*Social*") filed its chapter 11 bankruptcy petition on March 20, 2015, styled as Case Number 15-70142. In its initial petition, Social designated itself as a small business debtor, a designation which remains unchanged.

5. On April 2, 2015, this Court issued an Order Granting Debtors' Expedited Joint Motion for Administration of Chapter 11 Cases Pursuant to F.R.B.P. 1015(b), which required that Shea's chapter 11 case be jointly administered with Social's (hereinafter collectively "*Jointly Administered Debtors*") small business chapter 11 case. [ECF No. 137].

6. On April 26, 2015, 300 days had lapsed from the time in which Shea initially filed its petition.

7. On September 16, 2015, 180 days and then on January 14, 2016, 300 days had

---

[1] Any reference to **"Code"** or **"Bankruptcy Code"** is a reference to the United States Bankruptcy Code, **11** U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.

[2] A small business debtor is defined by 11 U.S.C. § 101(51D) as a person engaged in commercial or business activities with aggregate debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $2,000,000. This dollar figure has been automatically adjusted, and now stands at $2,490,925. However, the definition of small business debtor specifically excludes a "person whose primary activity is the business of owning or operating real property or activities incidental thereto…"

lapsed from the time in which Social initially filed its petition.

8. On June 16, 2015, Shea and Social filed a jointly administered Disclosure Statement and Plan of Reorganization, which has not been confirmed by this Court. [ECF No. 149].

9. On November 16, 2015, Shea, by and through its counsel, filed a Motion to Withdraw as Counsel of Record (hereinafter "*Motion to Withdraw*"), alleging, *inter alia*, that counsel and the joint debtors experienced substantial disagreement and that the Jointly Administered Debtors were unable to propose a feasible plan. [ECF No. 205].

10. On November 16, 2015, Shea also filed a Voluntary Motion to Dismiss, alleging substantially the same argument as set forth in the Motion to Withdraw. [ECF No. 206]. The next day, Social filed an identical Voluntary Motion to Dismiss. [Case No. 15-70142, ECF No. 34].

11. On November 24, 2015, responding to said motions, Lone Star National Bank (hereinafter "*Lone Star*") filed a Motion to Convert Case to Chapter 7 in Shea's case (hereinafter "*Motion to Convert*"). [Case No. 14-70348, ECF No. 207]. The same day, Lone Star also filed an Objection to Dismissal in Social's case, which included a request for *in rem* relief from the automatic stay. [Case No. 15-70142, ECF No. 35].

12. On December 16, 2015, this Court conducted an evidentiary hearing (hereinafter "*Hearing*") on Lone Star's Motion to Convert.

13. At the Hearing, Antonio Martinez, Dick Fuqua, and Lone Star (collectively, "*Participating Creditors*") all represented to this Court that they desired the consummation of a successful reorganization plan with the Jointly Administered Debtors.

14. At the Hearing, Lone Star orally consented to a continuance of the Motion to

Convert.

15. At the Hearing, this Court expressed its concern as to whether a plan could be filed in Shea, because the language contained in § 1121(e) states that in a small business case, "the plan and a disclosure statement (if any) shall be filed not later than 300 days after the date of the order for relief…" As such, this Court was concerned that the deadline for Shea to file a plan expired on April 26, 2015, assuming *arguendo* that § 1121(e) applies to Shea. However, contrary to the parties' impression, Shea is not actually a small business debtor. Rather, the real concern is that the filing deadline has passed in Social's case, which could cross-infect Shea's ability to file a plan by virtue of the jointly administered nature of the two cases. To address the concerns over the applicability of § 1121(e)'s filing deadline, the Participating Creditors offered to file a competing Jointly Administered Plan.

16. Counsel for Shea withdrew his Motion To Withdraw and the Motion to Dismiss. [Case No. 14-70348; ECF Nos. 219-20] (Notices of withdrawal of said motions). At the Hearing, Counsel for Social orally withdrew the Motion to Dismiss. Therefore, the Motion to Convert the Shea case remains the only pending motion for this Court to consider.

This Court will now determine whether to grant the Motion To Convert.

### III. Legal Authority

**A. Jurisdiction and Venue**

District courts have jurisdiction over "all proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. "Arising under" jurisdiction involves causes of action created or determined by a statutory provision of title 11, while "arising in" jurisdiction is not based on a right expressly created by title 11, but rather based on claims that

would have no existence outside of bankruptcy.  *See Wood v. Wood*, 825 F.2d 90 (5th Cir. 1987). Claims "related to" cases under title 11 do not inhere rights created by title 11 or existing solely because of a bankruptcy case. Rather, "related to" claims vest jurisdiction to a bankruptcy court if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  *Wood*, 825 F.2d at 93; *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n. 6 (1995).

Bankruptcy judges are empowered by statute "to hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11… and may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1).  However, before a bankruptcy judge may hear any case, the governing district court must "refer" the case to the bankruptcy court.  § 157 (a)-(b)(1).  "Arising under," "arising in," and "related to" bankruptcy cases are automatically referred to this Court.  *In re: Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012).  Under its § 157 authority, a bankruptcy court may enter final orders and judgments on "core" proceedings, but bankruptcy courts must submit to the district court (for *de novo* review) "proposed findings of fact and conclusions of law" on non-core proceedings "related to" a case under title 11.  § 157(c)(1).  Section 157 enumerates a non-exhaustive list of proceeding types considered "core."  § 157(2)(A)-(P).  Furthermore, the Supreme Court has further clarified the definition of "core" as all proceedings that "arise in" a bankruptcy case or "arise under" title 11.  *Stern v. Marshall,* 131 S. Ct. 2594, 2605 (2011).

With the consent of all parties, however, a district court may authorize bankruptcy courts to enter orders and judgments in non-core, "related to" proceedings.  § 157(c)(2).

The instant matter is a core proceeding, because it involves the applicability of the chapter 11 plan filing deadlines in § 1121, which is solely rooted in bankruptcy law under title

11. Therefore, this Court has statutory authority to hear the instant matter and to enter any appropriate final judgment. § 157(b)(2)(A) (matters concerning the administration of the estate).

This Court may only hear a case in which venue is proper. Venue with respect to cases under title 11 is governed by 28 U.S.C. § 1408, which designates that venue may be commenced in the district "in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity…" have been located for the one 180 day period preceding such commencement. Jointly Administered Debtors operate out of Edinburg, TX. Therefore, venue is proper.

## B. Constitutional Authority To Enter A Final Order

This Court also has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern*, 131 S. Ct. at 2594. In *Stern v. Marshall*, the Supreme Court considered the constitutional limitations that Article III imposes upon § 157's grant of final order and judgment powers to non-Article III courts. *Id.* The Supreme Court held that § 157 violated Article III to the extent that it authorized final judgments on certain matters. *Id.* at 2616. The Court found that the particular bankruptcy ruling in dispute did not stem from bankruptcy itself, nor would it necessarily be resolved in the claims allowance process, and it only rested in a state law counterclaim by the estate. *Id.* at 2618. The Court reasoned that bankruptcy judges are not protected by the lifetime tenure attribute of Article III judges, but they were performing Article III judgments by judging on "all matters of fact and law" with finality. *Id.* at 2618-19. Hence, the Court held that Article III imposes some restrictions against a bankruptcy judge's power to rule with finality. The Court found that a solely state law based counterclaim, while statutorily within the bankruptcy judge's purview, escaped a bankruptcy court's constitutional power. *Id.* at 2620. This Court reads *Stern* to authorize final judgments

only where the issue is rooted in a right created by federal bankruptcy or the resolution of which relies on the claims allowance process. In other words, this Court may issue final judgments and orders where the issue "arises in" or "arises under" bankruptcy, but not where the issue is merely "related to" bankruptcy. *See* § 157. However, even where the case does create a "Stern problem," Article III will be satisfied where the parties to the case knowingly and voluntarily consent to the bankruptcy court's power to issue final judgments. *Wellness International Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015).

The instant matter is a core proceeding, because it involves the applicability of the chapter 11 plan filing deadlines in § 1121, which is solely rooted in bankruptcy law under the Code. Therefore, this Court holds the constitutional authority to enter a final order in the instant matter.

## IV. Conclusions of Law

Section 1112 governs the conversion or dismissal of chapter 11 cases. Under § 1112(b)(1), a party in interest may request that a chapter 11 case be converted to chapter 7, and to resolve this request, the court shall dismiss or convert the case for cause, whichever is in the best interests of the creditors. 11 U.S.C. § 1112(b)(1). However, a court will decline to dismiss or convert where it determines that the appointment of a trustee or examiner is in the best interests of the creditors and the estate. *Id.* Section 1112(b)(2) forbids a court from converting or dismissing a case when the court "finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate" and "the debtor or any other party in interest establishes that:"

(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
(B) the grounds for converting or dismissing the case include an act or omission

>   of the debtor:
>   (i) for which there exists a reasonable justification for the act or omission; and
>   (ii) that will be cured within a reasonable period of time fixed by the court.

§ 1112(b)(2). Moreover, even without a party's motion to dismiss or convert pending, a bankruptcy court may *sua sponte* dismiss or convert a bankruptcy case for "cause." *In re Starmark Clinics, L.P.*, 388 B.R. 729, 737 (Bankr. S.D. Tex. 2008). Cause to dismiss a case is further clarified by § 1112(b)(4), a non-exhaustive list of circumstances, which includes the "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court." § 1112(b)(4)(J). Cause may also include non-enumerated factors, such as when the debtor acts in bad faith, itself a multi-factor determination administered by the bankruptcy judge's sound discretion. *See In re: JCP Properties*, 540 B.R. 596 (Bankr. S.D. Tex. 2015); *c.f. In re Jacobsen*, 609 F.3d 647, 660 (5th Cir. 2010); *Matter of Little Creek*, 779 F.2d 1068 (5th Cir. 1986). Thus, courts enjoy wide latitude in determining whether cause exists in a bankruptcy case.

This Court finds it most pertinent to determine whether Jointly Administered Debtors have timely filed and confirmed a chapter 11 plan within the time fixed by statute. The principal issue that will assist this Court in determining such cause can be summarized by the following question: if 300 days have elapsed since the commencement of Shea and Social's bankruptcy cases, can a plan of reorganization be filed by non-debtor parties in interest pursuant to § 1121? If the answer is no, then Jointly Administered Debtors' cases must be converted or dismissed, because there is cause in that Jointly Administered Debtors cannot timely file a plan.

Section 1121 provisions various deadlines affecting the filing of a plan in a chapter 11 reorganization. *See In re Star Ambulance*, 540 B.R. 251, 258 (Bankr. S.D. Tex. 2015). Section 1121(b) provides an exclusivity period, whereby "only the debtor may file a plan until after 120

days after the date of the order for relief." Thus, a chapter 11 debtor enjoys a breathing spell of 120 days from the date of petition in which to file a plan without interference from competing plans. In turn, § 1121(c) provides that any party in interest, including creditors, may file a plan when the debtor has not filed a plan or has not filed a plan that has been accepted by each class of impaired claims or interests. Section 1121(e) provides a special carve-out from the usual chapter 11 requirements when the case has a small business designation, which Congress intended to provide to reduce the time and expense required for small business debtors to find relief in a chapter 11 while requiring those entities to move at an expedited pace to the confirmation of their plans. *In re Star Ambulance*, 540 B.R. at 257; *In re Barnes*, 308 B.R. 77, 79 (Bankr. D. Colo. 2004). Section 1121(e) provides that:

In a small business case—
- (1) only the debtor may file a plan until after 180 days after the date of the order for relief, unless that period is—
  - (A) extended as provided by this subsection, after notice and a hearing; or
  - (B) the court, for cause, orders otherwise;
- (2) the plan and a disclosure statement (if any) shall be filed not later than 300 days after the date of the order for relief; and
- (3) the time periods specified in paragraphs (1) and (2), and the time fixed in section 1129(e) within which the plan shall be confirmed, may be extended only if—
  - (A) the debtor, after providing notice to parties in interest (including the United States trustee), demonstrates by a preponderance of the evidence that it is more likely than not that the court will confirm a plan within a reasonable period of time;
  - (B) a new deadline is imposed at the time the extension is granted; and
  - (C) the order extending time is signed before the existing deadline has expired

In turn, a "small business debtor," is defined as a "person[3] engaged in commercial or business activities… that has aggregate liquidated secured and unsecured debts as of the date of the filing

---

[3] Under § 101, "person" is defined to include a partnership or corporation. Shea is a partnership, as declared in its petition.

of the petition or the date of the order for relief in an amount not more than $2,000,000…" § 101(51D). However, this definition specifically excludes a "person whose primary activity is the business of owning or operating real property or activities incidental thereto…" or "any member of a group of affiliated debtors that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $2,000,000…" *Id.* As of February 2, 2013, this dollar threshold has been automatically adjusted, pursuant to § 104, to $2,490,925, which is the current relevant threshold when Shea and Social petitioned for bankruptcy. *See Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(a) of the Code*, Fed. Reg. Doc. 2013-03998. When a debtor is a small business debtor as defined by the Code, the debtor is obliged to state in the petition whether it is a small business debtor. Fed. R. Bankr. P. 1020(a).

The terms of § 1121(e) appear very simple: in a small business case, the small business debtor has 180 days of exclusivity and 300 days before which to hit the "drop dead date,"[4] after which "the" plan may no longer be filed. The fly in the lotion is rendered on the question as to which parties this drop dead provision applies. A small business debtor is undoubtedly bound by the drop dead provision. However, may creditors submit a plan after the drop dead date in a jointly administered case such as the one before this Court, as the Participating Creditors have suggested? If the drop dead provision only applies to small business debtors, then Jointly Administered Debtors would enjoy the chance to have a plan filed on the Court's docket and confirmed, thus rescuing the jointly administered chapter 11 cases.

Such a question raises a rarely discussed issue to which there is no binding authority in the Southern District of Texas. However, a sister bankruptcy court has squarely faced the issue and concluded that non-debtor parties in interest are not bound by the provisions of § 1121(e)(2).

---

[4] Bankruptcy courts often refer to the absolute cutoff provision of § 1121(e)'s 300 day rule as having a "drop dead" effect on small business debtors. *See In re Simbaki*, 522 B.R. 917 (Bankr. S.D. Tex. 2014).

*In re Simbaki*, 522 B.R. 917 (Bankr. S.D. Tex. 2014).[5] The *Simbaki* court concluded that the statutory framework of § 1121 was ambiguous on this point, but that the most reasonable interpretation of § 1121(e)(2)'s drop dead provision is that it applies only to small business debtors. *Id.* at 922. The court pointed to the facts that "*all* plans" had been changed to "the plan" in 2005, the statute only provisioned for small business debtors to extend the deadline, and Congress evinced an intent to provide greater judicial oversight over small business debtors and not creditors where those creditors essentially lack the incentive to oversee smaller debtors. *Id.* Though consistency between bankruptcy courts within a district is the target of sound public policy, this Court is not bound by a sister bankruptcy court and is duty bound to independently determine the instant matter.

To understand the applicability of § 1121(e)(2), this Court must analyze § 1121 as a whole. The interpretation of a statute begins with its text. *Medellin v. Texas*, 552 U.S. 491, 506 (2008); *see also In re Guerrero*, 540 B.R. 270, 274 (Bankr. S.D. Tex. 2015). Section 1121(c) provides, without explicit restrictions on the type of chapter 11 case in question, that any party in interest may file a competing plan under certain conditions, which include the expiration of the debtor's exclusivity period. Indeed, subsections (a)-(d) are all written in a general manner irrespective of the type of chapter 11 case. However, § 1121(e) is written differently. Subsection (e) is a mere five words, "[i]n a small business case" hovering over the provisions of (e)(1)-(e)(3). This fact immediately implies that § 1121(e) carves out a space only applicable to small business cases, wherein Congress has tweaked existing provisions in the general portion of § 1121 and added new requirements. The drop dead provision is one such new requirement.

Alone, this reading does not answer the question of whether the drop dead provision

---

[5] A Westlaw search reveals two cases outside of the Southern District of Texas, wherein the courts concluded that § 1121(e)'s deadline does not apply to creditors. *See In re Riviera Drilling & Exploration Co.*, 502 B.R. 863 (10th Cir. BAP 2013); *see also In re Florida Coastal Airlines, Inc.*, 361 B.R. 286 (Bankr. S.D. Fla. 2007).

applies to the filing deadline of creditor plans as well as small business debtor plans in the carved out, small business cases. However, in further reading § 1121(e) in isolation, it is clear that its provisions only apply to small business debtors. Section 1121(e)(1) provides that only the small business debtor may file a plan until after 180 days from the order for relief. Section 1121(e)(3) provides for an extension of deadlines *only if* the *small business debtor* gives notice to parties in interest and demonstrates by a preponderance that it will likely confirm a plan within a reasonable timeframe. Section 1121(e) is altogether one long sentence with a conjunctive "and." Thatching § 1121(e)(1)-(2) together would have it read, in summary, 'in a small business case, only the debtor may file a plan for 180 days and the plan shall be filed not later than 300 days.' Finally, § 1121(e)(2) imposes a deadline on filing a plan *and* a disclosure statement (if any).[6] Debtors, and not creditors, typically file a disclosure statement.[7] Given the rarity of the practice of a creditor filing a disclosure statement, it would be dubious to expect that it was intended for § 1121(e)(2) to apply beyond small business debtor filed plans where the provision imposes a simultaneous deadline on plans and disclosure statements. Through a plain reading of the Code alone, it is obvious that § 1121(e)(2) applies only to small business debtor plans.

    This Court's conclusion is bolstered by the history of the text. Prior to the amendments under the Bankruptcy Abuse Prevention and Consumer Protection Act (hereinafter "**BAPCPA**"), § 1121(e)(2) read as "all plans shall be filed." Bankruptcy Reform Act of 1994, Pub L. No. 103-394, § 217, 108 Stat. 4106, 4127 (1994). As currently amended by BAPCPA, the text reads "the

---

[6] A disclosure statement is a document filed with a proposed plan that: divulges the debtor's history and summary of operations; discusses the concurrently filed plan; and divulges the debtor's financial information. 3 Bank. Practice Handbook § 14:147 (2d ed.). The purpose of a disclosure statement is to provide adequate information to creditors in order to allow them to make informed judgments about the proposed plan. *Id.*

[7] This Court located a mere four cases in which a creditor filed a disclosure statement. *In re Grodel Mfg., Inc.*, 33 B.R. 693 (Bankr. D. Conn. 1983); *In re Rebel Rents, Inc.*, 326 B.R. 791 (Bankr. C.D. Cal. 2005); *In re Point Wylie Co.*, 78 B.R. 453 (Bankr. D.S.C. 1987); *In re Be-Mac Transport Co., Inc.*, 1996 WL 254833 (8th Cir. May 16, 1996). Considering the purpose behind a disclosure statement in apprising creditors of the debtor's status, it is unsurprising that the practice of a creditor filing such a document is rare.

plan… shall be filed." Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub, L. No. 109-8, § 438, 119 Stat. 23, 118 (2005). This strongly suggests that Congress wished to open the opportunity for creditors or other parties in interest to continue to submit competing plans once the window of opportunity sunsets on the small business debtor. Certainly, if Congress wished to provision a drop dead deadline for all plans filed in a small business chapter 11, it absolutely knew how to say so in 1994 and likely did not forget how to say so in 2005. Such a change in language is resolvedly informative.

Moreover, where the previous version of § 1121(e)(3) reads, "on request of a party in interest… the court may… reduce [or increase] the [exclusivity and drop dead deadlines]," the current amended version contains no such party in interest language, but rather only provisions for the small business debtor to demonstrate evidence of likely, timely plan confirmability. 11 U.S.C.A. § 1121(e)(3) (West 1994). This implies that § 1121(e) was meant to be shifted to the exclusive province of the small business debtor's actions. Additionally, it would be patently absurd to expect that creditors be bound by the 300-day drop dead date and yet not be afforded the opportunity to extend said deadline. Accordingly, this Court reads no intent by Congress to put creditors on a lesser footing than small business debtors in a small business chapter 11.

Finally, this Court is convinced that the plain meaning of § 1121(e)'s companion provision, § 1129(e), supports the construction that the 300-day drop dead date applies only to small business debtor plans. Section 1129(e), which applies only to small business case, provisions a deadline wherein, "the court shall confirm a plan that complies with the applicable provisions of this title and that is filed in accordance with section 1121(e) not later than 45 days after the plan is filed." *See In re Star Ambulance*, 540 B.R. at 257-58. Section 1129(e) is intertwined with § 1121(e)(2), the latter of which affords the small business debtor 300 days to

file the plan and the former of which affords said debtor to have the court confirm the filed plan. *Id.* (construing § 1129(e) and concluding that the 45 day confirmation deadline, in combination with the 300 day deadline, was emplaced in order to burden small business debtors to act expeditiously). Where the small business debtor fails to file a plan in 300 days and the debtor fails to have any of its filed plans confirmed within 45 days, it shall lose its opportunity to consummate a plan of its own design. Many courts, both within and outside of this jurisdiction, have convincingly concluded that § 1129(e)'s 45 day confirmation deadline for a filed plan in a small business chapter 11 case does not apply to creditors. *In re Simbaki*, 522 B.R. at 920 ("Movants urge that the deadlines in § 1121(e) and 1129(e) apply to non-debtor plan proponents…The Court overrules this contention."); *In re Riviera Drilling & Exploration Co.*, 502 B.R. 863 (10th Cir. BAP 2013); *In re Angel Fire Water Co., LLC*, 2015 WL 251570, at *6 (Bankr. D. N.M. Jan. 20, 2015). Even without this persuasive support, this Court is independently convinced that this proposition is true. Under § 1121(e)(3), the 45 day time period fixed in § 1129(e) may be extend only if the small business debtor demonstrates the likelihood of plan confirmability. This puts § 1129(e)'s extension into the exclusive province of the small business debtor's actions. It would be nonsensical to place the onus on the small business debtor to request an extension on a deadline and prove confirmability for a plan that it never filed while denying a creditor the chance to request an extension where the small business debtor may so do. Again, Congress evinced no intent to place creditors on a lesser footing than small business debtors. Rather, Congress provisioned a small business chapter 11 designation to reduce the time and expense required for small business debtors to find relief in a chapter 11 while requiring said debtors to move at an expedited pace. *In re Star Ambulance*, 540 B.R. at 257; *In re Barnes*, 308 B.R. at 79. It has been said that Congress created these special small business deadlines in order

to prevent small business debtors from treating their small business cases as a "parking lot." *In re Simbaki*, 522 B.R. at 924. This Court thus concludes that § 1129(e)'s 45 day deadline applies only to the small business debtor's plan in a small business case. The fact that a companion provision in § 1129(e), as a partner to the policy behind § 1121(e), is construed as inapplicable to creditor filed plans provides fabulous evidence that § 1121(e) is also inapplicable to creditor filed plans. To otherwise conclude would make mincemeat out of both the letter and the spirit of §§ 1121(e) and 1129(e).

In summary, this Court concludes that the text of § 1121 demonstrates that creditors, as parties in interest, may file competing plans in a small business case beyond 300 days from which an order for relief was entered. The Participating Creditors are thus free to file a plan in the jointly administered cases *ad infinitum*, unless the cases are dismissed or converted. To conclude otherwise would wreak dishonor and trumpery upon the plain meaning of § 1121.

Shea's case has elapsed past the 300-day mark. However, this is not a pertinent issue, as Shea is not a small business debtor as defined by the Code, and is thus not limited by § 1121(e)'s drop dead provision.

As previously discussed, § 101(51D) excludes debtors whose primary activity is the business of owning or operating real property. A simple look at Shea's first (June 30, 2014) and last (December 11, 2015) monthly operating reports reveals that Shea is in the business of real estate development. [ECF No. 60 and 216]. Shea, by and through counsel's explanation of Shea's business, confirmed that Shea accrues most of its revenue through the leasing of its real estate. This is the business of owning or operating real property, because landlord/tenant relationships are the epitome of the business of operating real estate. Thus, Shea is not a small

business debtor, as defined by § 101(51D), and is entitled to file a plan pursuant to § 1121(a).[8] This Court finds no indication that Shea's case was ever converted to a small business chapter 11 from its initially petitioned status as a chapter 11. To the extent that Shea was ever characterized as having a small business case, this Court now holds that Shea is not a small business debtor.

On the other hand, Social has exceeded the 300-day limitation as of January 14, 2016. As Social is unable to file a plan, and since jointly administered cases calls for jointly administered plans, Social essentially poisons the plan filing well for Shea. Therefore, the Jointly Administered Debtors are prohibited from filing a plan, but the Participating Creditors are free to submit a plan.

Since creditors may so submit a competing plan, Jointly Administered Debtors are not doomed to fail in their chapter 11 cases, and this Court thus finds no current cause for conversion or dismissal.

## V. Conclusion

It is a rare day for any bankruptcy court to witness multiple creditors and debtors act in such an amicable, cooperative, and commendable manner, as this Court did so witness. Even so, this Court is duty bound to ensure that it acts in accordance with the powers vested in bankruptcy courts by Congress. To the debtors' fortune, this Court concludes that § 1121(e) imposes no terminal deadlines upon a creditor's ability to file a competing chapter 11 plan. However, despite Shea's characterization as a chapter 11 case, Jointly Administered Debtors will be unable to file a plan themselves, due to Social's status as a small business debtor that places the Jointly Administered Debtors within the purview of § 1121(e)'s 300-day limitation – a ship that has sailed.

---

[8] "The debtor may file a plan with a petition commencing a voluntary case, or at any time in a voluntary case or an involuntary case."

Upon issuance of this Memorandum Opinion, a separate order consistent hereto shall simultaneously be entered on the docket.

SIGNED 01/15/2016.

_____
Eduardo V. Rodriguez
United States Bankruptcy Judge